UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TANNER MATTHEW NESS,<br><br>      Petitioner,<br><br> v.<br><br>DANIEL W. WHITE,<br><br>      Respondent. | Case No. C23-0566-BHS-SKV<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Tanner Matthew Ness is a pro se prisoner who is currently confined at the Monroe Correctional Complex in Monroe, Washington. He filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from a 2020 Whatcom County Superior Court judgment and sentence. Dkt. 4. Respondent filed an answer to the petition and submitted relevant portions of the state court record. Dkts. 13, 14. Petitioner filed an untimely response to Respondent's answer. Dkt. 15. This Court, having reviewed the petition, all briefing of the parties, and the balance of the record, concludes that Petitioner's petition for writ of habeas corpus should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## II. FACTUAL BACKGROUND

Petitioner is in custody pursuant to a Washington state court judgment and sentence entered on May 6, 2020, after Petitioner pled guilty to attempted rape of a child in the second degree. *See* Dkt. 14-1 at 2.

In the order denying Petitioner's personal restraint petition, the Washington Court of Appeals summarized the facts underlying Petitioner's conviction as follows:

> In 2020, Ness pleaded guilty to attempted rape of a child in the second degree based on his December 2017 actions in connection with a Washington State Patrol sting operation, known as a "Net Nanny" operation. [Citation omitted]. As part of this operation, an undercover law enforcement officer posted an ad on Craigslist, posing as a mother seeking an individual to engage in sexual acts with her two minor children. Following lengthy online discussion with the undercover officer, Ness agreed to participate in sexual contact with the fictitious minors, drove to Whatcom County, and was arrested when he arrived at the agreed meeting location, carrying condoms, lubricant, and gift cards, all items he agreed to bring. Ness admitted to investigating officers that if they had been present, he would have engaged in sexual contact with the two minors, as long as they were in agreement.
>
> In exchange for Ness's plea, the State agreed to dismiss additional charges of attempted rape of a child in the first degree and two counts of commercial sex abuse of a minor. The court imposed an indeterminate sentence with a jointly-recommended minimum term of 58.5 months, the bottom of the standard range.

Dkt. 14-1 at 18–19.

## III. PROCEDURAL BACKGROUND

Petitioner did not pursue a direct appeal of his judgment and sentence. *See* Dkt. 4 at 5. Instead, on April 27, 2021, Petitioner filed a motion for relief from judgement or order in the superior court, which was transferred to the Washington Court of Appeals as a personal restraint petition. *See* Dkt. 14-1 at 27–118. The Washington Court of Appeals framed the grounds for relief asserted by Petitioner as follows:

REPORT AND RECOMMENDATION
PAGE - 2

>Ness primarily claims (1) his charges were the result of outrageous governmental conduct that violated his constitutional rights; (2) his counsel performed deficiently during the plea process; and (3) his plea was not knowing, voluntary and intelligent.

Dkt. 14-1 at 19.

On October 4, 2022, the Acting Chief Judge for the Washington Court of Appeals entered an order dismissing Petitioner's personal restraint petition. *See* Dkt. 14-1 at 18–25. Petitioner then sought discretionary review by the Washington Supreme Court. Dkt. 14-2 at 297–311. Petitioner's motion for discretionary review raised the following issues: (1) ineffective assistance of counsel; (2) violations of Petitioner's constitutional and statutory rights; (3) outrageous conduct of law enforcement; and (4) various due process violations. *Id.* at 299.

On December 2, 2022, the Deputy Commissioner for the Washington Supreme Court entered an order denying Petitioner's motion for discretionary review. *See* Dkt. 14-2 at 314–15. Petitioner moved to modify the Commissioner's ruling, *id.* at 366–417, and the Washington Supreme Court denied that motion on March 8, 2023, *id.* at 420. Thereafter, the Washington Court of Appeals issued a certificate of finality certifying that its order dismissing Petitioner's personal restraint petition became final on April 10, 2023. *Id.* at 422.

On April 12, 2023, Petitioner initiated this federal habeas action. Dkt. 1.

## IV.  GROUNDS FOR RELIEF

Petitioner identifies the following grounds for relief in his petition:

1. Ineffective assistance of counsel;

2. Violations of Petitioner's constitutional and statutory rights to competent counsel, to present an entrapment defense, to present mitigating evidence, to be free from cruel and unusual punishment, and to parent;

3. Outrageous governmental conduct by law enforcement; and

REPORT AND RECOMMENDATION
PAGE - 3

    4.        Due process violations relating to heightened evidentiary standards, the denial of Petitioner's right to present certain mitigating evidence at sentencing, and the denial of his right to present evidence of law enforcement's bad acts.

See Dkt. 4 at 5–10.

## V.  DISCUSSION

Respondent concedes that Petitioner properly exhausted his state court remedies by fairly presenting them to the Washington Supreme Court for review. Dkt. 13 at 5. However, Respondent argues that Petitioner is not entitled to habeas relief because the state courts reasonably rejected Petitioner's claims. *See id.* at 6–24.

### A.    Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or if the decision was based on an unreasonable determination of the facts considering the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state

REPORT AND RECOMMENDATION
PAGE - 4

court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407–09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). The Supreme Court has also explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71–72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485–86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

B.      Ineffective Assistance of Counsel

Petitioner asserts in his first ground for relief that he was denied effective assistance of counsel when his counsel refused to share discovery with him, refused to present mitigating

REPORT AND RECOMMENDATION
PAGE - 5

evidence in his favor, and failed to pursue viable defense options and inform Petitioner of collateral consequences. Dkt. 4 at 5. *See also id.* at 7 (contending Petitioner was barred from pursuing an entrapment defense and was not allowed to submit evidence mitigating culpability and demonstrating abuse of law enforcement authority), *id.* at 10 (contending Petitioner was barred from presenting mitigating evidence and evidence of law enforcement's outrageous conduct).

Ineffective assistance of counsel claims arising out of the plea process are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. This requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. To prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound strategy. *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. *Strickland*, 466 U.S. at 693. To satisfy the "prejudice" requirement of the *Strickland* standard in the context of a guilty plea, a petitioner must demonstrate that it is reasonably probable that, but for counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Strickland*, 466 U.S. at 697.

While the Supreme Court, in *Strickland*, established the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

Petitioner first presented his ineffective assistance of counsel claim in his personal restraint petition. *See* Dkt. 14-1 at 52. The Washington Court of Appeals rejected Petitioner's claim, broadly finding as follows:

> As to Ness's claim of ineffective assistance, the right to effective assistance of counsel applies to the plea process. *State v. Sandoval*, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). To establish ineffective assistance of counsel, Ness must show that counsel's professional performance fell below an objective standard of reasonableness and that, but for counsel's error, there is a reasonable probability the outcome would have been different. *Id.; In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Crace*, 174 Wn.2d at 840. To specifically establish prejudice arising from counsel's deficient

REPORT AND RECOMMENDATION
PAGE - 7

representation in plea negotiations, the petitioner must show that, but for the deficiency, there is a reasonable probability he would have decided differently with respect to the plea offer. *Sandoval*, 171 Wn.2d at 174–75; *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 780–81, 863 P.2d 554 (1993). There is a "strong presumption" that counsel's performance was reasonable and conduct that can be characterized as trial strategy is not deficient. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

Ness contends that trial counsel was ineffective during the plea process because he pressured Ness to plead guilty, failed to fully advise him of the consequences of conviction, and failed to pursue an entrapment defense.

Counsel must "substantially assist" the defendant in deciding whether or not to plead guilty by discussing the strengths and weaknesses of the case. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 706, 327 P.3d 660 (2014); *State v. Edward*, 171 Wn. App. 379, 394, 294 P.3d 708 (2012). Here, at the plea hearing, Ness confirmed on the record that his plea was not the product of threats or coercion. The copies of redacted email he provides in support of his claim do not show otherwise. The documents Ness supplies show that, consistent with counsel's obligation, counsel provided an unvarnished assessment of the case and encouraged Ness to plead guilty because he believed that Ness's chances of obtaining a better result at trial were negligible. And while Ness continually expressed frustration because he believed that his conduct did not warrant the serious charges filed by the State and should not result in any prison term, defense counsel explained the policy of the prosecutor's office with regard to cases involving Net Nanny operations, outlined the pros and cons of proceeding to a jury trial versus a bench trial versus pleading guilty, advised Ness that there was no way to avoid a risk of conviction, and provided his opinion that the prosecutor would not be willing to offer a further reduction.

Dkt. 14-1 at 20–22.

The court's findings were reasonable. Email exchanges provided by Petitioner reveal that counsel gave a factual assessment of the evidence against Petitioner and the likelihood of his conviction at trial. *See* Dkt. 14-1 at 92–100. And the record shows that counsel's recommendation to plead guilty was reasonable given the volume of evidence against Petitioner. Petitioner responded to a Craigslist ad posted by an undercover officer posing as a mother seeking an individual to engage in sexual acts with her two minor children. *See* Dkt. 14-1 at 18–

19. Petitioner engaged in a lengthy discussion with the undercover officer and agreed to participate in sexual contact with the fictitious minors. *Id*. Petitioner drove to Whatcom County, the agreed meeting location, with condoms, lubricant, and gift cards. *Id*. Petitioner admitted to investigating officers that if they had not been present, he would have engaged in sexual contact with the two minors as long as they agreed. *Id*.

A substantial number of messages from Petitioner prove that he believed the girls existed and that he intended to engage in sexual acts with them. *See* Dkt. 14-2 at 170–82. Petitioner agreed to perform oral sex and penetration on the two minor children and stated he did not have an issue becoming aroused by them. *Id*. Petitioner also sent a photo of his erect penis and asked about the girls' sexual preferences. *Id*. These facts indicated Petitioner had a negligible chance of acquittal at trial and supported a finding that Petitioner's counsel reasonably advised Petitioner to plead guilty.

The court of appeals also appropriately rejected Petitioner's assertion that he was not informed of the possibility of lifetime supervision. The court explained its decision as follows:

> Ness claims counsel did not advise him that he had an option to begin serving his sentence without pleading guilty. But there is nothing in the record to indicate that such an option existed. Ness also claims that his counsel did not advise him that, as a consequence of his conviction, he could be subject to community custody supervision for life. However, at the plea hearing, Ness expressly affirmed that he had reviewed the plea agreement with counsel. And the plea documents expressly informed him that if released from custody, he could be subject to supervision for up to the maximum term of his sentence, which was life.

Dkt. 14-1 at 22.

As noted by the court, at the plea hearing, Petitioner expressly affirmed that he had reviewed the plea agreement with his counsel. *See* Dkt. 14-2 at 234–38. The plea documents—which Petitioner signed, affirming that his attorney had explained the

documents and that Petitioner understood them, *id.* at 222— informed Petitioner that if he was released from custody, he would be subject to supervision for up to the maximum of his sentence, i.e., life*, see id.* at 217. Thus, the record indicates that Petitioner was aware of the possibility of lifetime supervision.

The Washington Court of Appeals likewise reasonably rejected Petitioner's belief that his counsel failed to pursue an entrapment defense. The court reasoned as follows:

> As to Ness's claim regarding affirmative defenses, Ness's counsel did not assert a defense because Ness chose to plead guilty to a single charge, rather than face trial on four charges, including the more serious charge of attempted rape in the first degree. There is nothing in the record to indicate whether counsel would have requested an entrapment instruction had the case proceeded to trial. And regardless of whether the evidence would have been sufficient evidence to support such an instruction, there were reasonable grounds for counsel to advise against relying on entrapment, or another defense. Given the strength of the evidence, including Ness's statements agreeing to engage in specific sexual acts with minors, his conduct in those discussions of sending an unsolicited photograph of his erect penis, his admission that he would have gone through with his stated intent to have sex with the minors, and his admission to having viewed child pornography, there [was] a legitimate strategic basis for counsel to recommend accepting the plea offer to avoid the risk of additional convictions and a longer sentence at trial.

Dkt. 14-1 at 22–23.

As the court noted, counsel did not pursue an entrapment defense because Petitioner chose to plead guilty, but regardless, the evidence did not indicate Petitioner was likely to succeed by asserting entrapment at trial. In Washington, a prima facie entrapment defense requires a defendant to show that (1) the crime originated in the mind of the police or an informant, and (2) the defendant was induced to commit a crime that he or she was not predisposed to commit. *State v. Arbogast*, 199 Wn.2d 356, 360 (2022). Police inducement is not merely government presentation of an opportunity to commit a crime. *Id*. at 377. "There must be opportunity 'plus' something else, such as excessive pressure placed on the defendant. *Id*.

REPORT AND RECOMMENDATION
PAGE - 10

The record here shows that Petitioner was unlikely to prevail with an entrapment defense at trial, and that it was reasonable for counsel to recommend Petitioner take a plea deal to avoid additional charges.  Although a factfinder could have found that the undercover officer's messages presented Petitioner with an opportunity to commit a crime, the evidence showed that Petitioner not only responded to the Craigslist ad, but that he also willfully—and with little persuasion—engaged in lengthy explicit online discussions about having sex with minors.  *See* Dkt. 14-2 at 170–82.  Petitioner also admitted he would have followed through with sexual acts with the minor girls if they were present.  Dkt. 14-1 at 19.  Based on Petitioner's own statements and voluntary transmission of an explicit photo, the court of appeals properly concluded that it was reasonable strategy for Petitioner's counsel to recommend a plea deal over the pursuit of an entrapment defense at trial.

And the court of appeals reasonably rejected Petitioner's claims that counsel performed deficiently by failing to request a lower sentence and failing to present mitigating evidence.  The court explained its decision as follows:

> Ness also claims counsel performed deficiently by failing to request a sentence below the standard range, failing to present mitigating evidence, or objecting to inaccuracies in the presentence investigation report. In the context of sentencing, to establish prejudice, Ness must show that the court would have imposed a different sentence but for counsel's deficient performance. *State v. Calhoun*, 163 Wn. App. 153, 168, 257 P.3d 693 (2011).
>
> Defense counsel was bound by the plea agreement to recommend a minimum term of 58.5 months and could not have requested a minimum term below the standard range without breaching that agreement. And contrary to Ness's argument, the sentencing court did not suggest that it would have been inclined to impose a below-range sentence. Although it is clear that the presentence report did not align in all respects with Ness's views, he fails to establish deficient performance or prejudice based on counsel's failure to raise objections to any particular statements. The record reflects that when it imposed the sentence, the court was apprised of Ness's age when he committed the crime (21 years old), of the traumatic brain injury Ness sustained several years earlier,

REPORT AND RECOMMENDATION
PAGE - 11

and of many of the circumstances of his background. Ness cannot demonstrate that the court would have imposed a lower sentence if defense counsel had presented different or additional evidence, or made different arguments, at sentencing.

Dkt. 14-1 at 23–24.

As the court explained, counsel was bound by the plea agreement and could not have argued for a lower sentence without breaching it. The agreement recommended a 58.5 month minimum, the low end of the standard range, *see* Dkt. 14-1 at 3, and there was no indication that the sentencing court would have imposed a shorter sentence but for the plea deal. Moreover, Petitioner failed to show that the sentencing court would have imposed a different sentence had counsel presented different or additional mitigating evidence, or made different arguments, at sentencing. As the court of appeals noted, the sentencing court was aware of Petitioner's traumatic brain injury, his age at the time that he committed the crime, and his background. Dkt. 14-1 at 23–24. The court therefore reasonably rejected any contention that counsel's failure to present mitigating evidence prejudiced Petitioner.

Finally, to the extent Petitioner, in this Court, reprises his claim that his plea was not knowing and voluntary, the court of appeals reasonably rejected that claim. Due process requires that a guilty plea be both knowing and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242–44 (1969). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A defendant who enters a guilty plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by demonstrating that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases. *See id*. at 56–57 (citing

REPORT AND RECOMMENDATION
PAGE - 12

*McMann v. Richardson*, 397 U.S. 759, 771 (1970); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

The Washington Court of Appeals rejected Petitioner's challenge to the validity of his guilty plea, explaining its decision as follows:

> To the extent that Ness claims that his plea was not knowing and voluntary, the record shows otherwise. Due process requires that a guilty plea be knowing, intelligent, and voluntary. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 297, 88 P.3d 390 (2004). A written plea statement is prima facie evidence that the plea is voluntary when the defendant acknowledges reading and understanding the written statement and that the contents of the statement are true. *State v. Perez*, 33 Wn. App. 258, 261, 654 P.2d 708 (1982). And when the trial court has inquired into the voluntariness of the plea on the record, the presumption of voluntariness is "well nigh irrefutable." *Perez*, 33 Wn. App. at 262. A written plea statement in conjunction with a colloquy on the record provide prima facie verification of the voluntariness of a plea. *State v. Osborne*, 102 Wn.2d 87, 97, 684 P.2d 683 (1984). More than mere allegations are required to overcome this "'highly persuasive' evidence of voluntariness." *Osborne*, 102 Wn.2d at 97. To establish error in this context, a petitioner must demonstrate that "were it not for the constitutional error, a rational person in his situation would more likely than not have rejected the plea and proceeded to trial*.*" *State v. Buckman*, 190 Wn.2d 51, 69, 409 P.3d 193 (2018). Ness signed a written plea statement and engaged in a plea colloquy with the court. He indicated on the record that he had reviewed the plea statement and had no questions about it. Ness fails to demonstrate that his plea is constitutionally infirm or that he was prejudiced as a result.

Dkt. 14-2 at 24–25.

The plea colloquy transcript supports the state court's decision to reject Petitioner's involuntary plea claim. *See* Dkt. 14-2 at 233–39. Petitioner acknowledged at the time he entered his plea that he had reviewed the plea documents with counsel, and that he understood the contents of those documents. *See id*. Petitioner also acknowledged that he understood the rights he was giving up by pleading guilty and affirmed that his plea was not the product of threats or coercion. *See id*. Finally, Petitioner affirmed that the written statement contained in the plea documents, which provided the factual basis for the offenses to which he was pleading guilty,

was true. *Id.* These acknowledgements, made in open court, carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner fails to demonstrate constitutional error.

Thus, because the Washington Court of Appeals reasonably found that counsel's performance was not deficient under *Strickland*, Petitioner fails to demonstrate that its decision rejecting his ineffective assistance of counsel claim was contrary to, or constituted unreasonable application of, clearly established United States Supreme Court precedent. Petitioner's habeas petition should therefore be denied with respect to his ineffective assistance of counsel claim.

C.      Remaining Grounds for Relief

Petitioner asserts various constitutional violations in his remaining grounds for relief, including infringement on his right to present a defense, cruel and unusual punishment, the denial of his right to parent, and due process violations in the form of heightened evidentiary standards and refusal to allow Petitioner to present certain evidence.[1] Dkt. 4 at 7–10. Petitioner also alleges he was unlawfully subject to the outrageous conduct of law enforcement. *Id.* at 8.

To the extent Petitioner asserts constitutional violations based on pre-plea conduct—such as the conduct of law enforcement in investigating the charges against him, the alleged violation of his right to present a defense (including an entrapment defense), or the use of heightened evidentiary standards—his claims do not entitle him to federal habeas relief. Generally, one who voluntarily and intelligently pleads guilty to a criminal charge may not subsequently seek federal habeas corpus relief based on pre-plea constitutional violations. *Haring v. Prosise,* 462 U.S.

---

[1] While Petitioner also complains that "a prohibition of alcohol consumption" imposed by the sentencing court is irrelevant to his case, Dkt. 4 at 7, he fails to allege that this prohibition violates any of his constitutional rights. The Court therefore does not address this claim herein.

REPORT AND RECOMMENDATION
PAGE - 14

306, 319–20 (1983); *Hudson v. Moran*, 760 F.2d 1027, 1029–30 (9th Cir. 1985). The only exceptions to this bar are: (1) a claim that the plea itself was not voluntary and intelligent; (2) a claim that the plea was the result of constitutionally deficient representation as to the plea itself; and (3) a claim that on the face of the record, the court had no power to enter the conviction. *United States v. Broce*, 488 U.S. 563, 569-72 (1989). As previously discussed, the Washington Court of Appeals reasonably determined that Petitioner's plea was voluntary and intelligent, and that Petitioner received constitutionally sufficient representation during the plea process. *See* Dkt.14-1 at 21–25. Petitioner does not allege, nor would there be any merit to the contention that, the superior court had no power to enter Petitioner's conviction. Accordingly, Petitioner waived any claims alleging pre-plea violations of his constitutional rights.

And to the extent Petitioner challenges post-plea conduct as constitutionally infirm, he fails to state a claim in habeas. Petitioner vaguely complains of "cruel punishment inflicted in a lifetime of various incarcerations." Dkt. 4 at 7. If, in doing so, Petitioner intends to challenge the manner in which the trial court applied state sentencing law in imposing Petitioner's sentence, Petitioner has not presented a viable claim for relief, as issues of state law are not cognizable in habeas. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (it is not the province of federal habeas courts to re-examine state court conclusions regarding matters of state law); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law"). If Petitioner intends to assert that his sentence violates the Eighth Amendment, he has not presented sufficient facts to demonstrate any constitutional violation and, in any event, his sentence was within the statutory range, *see* Dkt. 14-2 at 216. Absent extraordinary circumstances, a sentence within the statutory range is not subject to challenge under the Eighth Amendment. *See Harmelin v. Michigan*, 501 U.S. 957, 994–96 (1991); *Austin v. Jackson*, 213

REPORT AND RECOMMENDATION
PAGE - 15

F.3d 298, 302 (6th Cir. 2000). Petitioner fails to demonstrate that a departure from this general rule is appropriate here.

Similarly, Petitioner alleges violations of his right to parent, Dkt. 4 at 7, but marshals no support for the claim. And Petitioner makes vague reference to due process violations arising from his inability to present mitigating evidence of his "late adolescence" at the sentencing hearing. Dkt. 4 at 10; Dkt. 4-1 at 44–45. This again arguably raises an issue of state law relative to the manner in which the sentencing court-imposed Petitioner's sentence; Petitioner vaguely citing due process violations cannot transform this state law claim into a federal one. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (holding that a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process," and that "alleged errors in the application of state law are not cognizable in federal habeas corpus."). But beyond this, as the court of appeals reasonably noted, when the sentencing court imposed Petitioner's sentence, it was "apprised of Ness's age when he committed the crime (21 years old) . . . ." Dkt. 14-1 at 23. Petitioner therefore fails to demonstrate that the court, which sentenced him to the low end of the standard range, did not consider his age when doing so, nor does he demonstrate that the court's refusal to consider such evidence would have amounted to a violation of Petitioner's due process rights.

Thus, because Petitioner fails to demonstrate that his post-plea allegations raise cognizable claims in habeas, the Court should dismiss his remaining grounds for relief.

## VI. CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner

has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

## VII. CONCLUSION

For the reasons set forth above, this Court recommends that Petitioner's petition for writ of habeas corpus be denied, and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

## VIII. OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 8, 2023**.

DATED this 14th day of November, 2023.

*S. Kate Vaughan*
S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 17